IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Senior Judge Wiley Y. Daniel**

Civil Action No.   12-cv-01534-WYD

FILADELFIO T. SALAZAR,

    Plaintiff,

v.

CAROLYN W. COLVIN, Acting Commissioner of the Social Security Administration[1],

    Defendant.

**ORDER**

THIS MATTER is before the Court on review of the Commissioner's decision that denied Plaintiff's application for Supplemental Security Income Benefits.  For the reasons stated below, this case is reversed and remanded to the Commissioner for further fact finding.

I.    BACKGROUND

Plaintiff, born on June 17, 1966, protectively filed for Supplemental Security Income Benefits on January 26, 2009, alleging disability since November 4, 2008. (Transcript ["Tr."] 15, 146, 151.)  Disability was alleged due to "[i]njury to back and ribs, punctured right lung, anxiety and depression".  (*Id.*)  The record reveals that Plaintiff was struck by a tractor on November 4, 2008, fracturing ribs and puncturing a lung.  (*Id.*

---

[1] Carolyn W. Colvin is substituted for Michael J. Astrue as the Defendant pursuant to Fed. R. Civ. P. 25(d).

342.) As he was starting to recover from those injuries, he was involved in a motor vehicle accident, causing low back, hip, and leg pain. (*Id.*)

Plaintiff's application was denied initially (Tr. 65-67), and Plaintiff requested a hearing before an administrative law judge ["ALJ"]. An administrative hearing was held (*id.* 29-63), and the ALJ issued a decision on February 10, 2011, finding that Plaintiff was not disabled at step five of the sequential evaluation required by law. (*Id.* 12-24.)

More specifically, at step one the ALJ found that Plaintiff had not engaged in substantial gainful activity since January 26, 2009, the application date. (Tr. 17, Finding 1.) At steps two and three, she found that Plaintiff had severe impairments of "degenerative disc disease; rib pain status post fracture; depression and anxiety", but that he did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments. (*Id.* 17-18, Findings 2 and 3.)

The ALJ then assessed Plaintiff's residual functional capacity ["RFC"]. (Tr. 19-22.) She found that Plaintiff could perform medium work except he "would require simple, unskilled work with a specific vocational preparation (SVP) of one or two; should not work in close proximity to coworkers, meaning that the individual could not function as a member of a team; should have direct minimal contact with the public; could lift or carry 25 pounds both frequently and occasionally; could stand and/or walk, with normal breaks, for a total of six hours in an eight hour workday; could sit, with normal breaks, for a total of six hours in an eight hour workday and could perform pushing and pulling motions with his upper and lower extremities within the aforementioned weight restriction but should only occasionally push or pull with his non-dominant left upper

extremity." (*Id.* 19, Finding 4.)  She further found that while Plaintiff's "medically determinable impairments could possibly be expected to cause the alleged symptoms", his "statements concerning the intensity, persistence and limiting effects of these symptoms were inconsistent" with the ALJ's RFC "and therefore not credible."  (*Id.* 20.)

At step four, the ALJ found that Plaintiff has no past relevant work.  (Tr. 22, Finding 5.)  At step five, relying on vocational expert ["VE"] testimony, the ALJ found that Plaintiff could perform other work existing in significant numbers in the national economy, including wholesale marker, housekeeping cleaner, and brake adjuster. (*Id.* 22-23 and Finding 9.)  Thus, the ALJ found that Plaintiff "has not been under a disability, as defined in the Social Security Act, since January 26, 2009, the date the application was filed."  (*Id.* 23, Finding 10.)

The Appeals Council denied Plaintiff's request for review of the ALJ's decision (Tr. 1), making the ALJ's February 2011 decision the Commissioner's final decision for purposes of judicial review.  *See* 20 C.F.R. § 422.210(a).  Plaintiff timely requested judicial review, and this appeal followed.

II.    ANALYSIS

    A.    Standard of Review

A Court's review of the determination that a claimant is not disabled is limited to determining whether the Commissioner applied the correct legal standard and whether the decision is supported by substantial evidence.  *Hamilton v. Sec. of Health and Human Servs.*, 961 F.2d 1495, 1497-98 (10th Cir. 1992).  Substantial evidence is evidence a reasonable mind would accept as adequate to support a conclusion.  *Brown*

*v. Sullivan*, 912 F.2d 1194, 1196 (10th Cir. 1990). "It requires more than a scintilla of evidence but less than a preponderance of the evidence." *Gossett v. Bowen*, 862 F.2d 802, 804 (10th Cir. 1988).

"Evidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion." *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992). Further, "if the ALJ failed to apply the correct legal test, there is a ground for reversal apart from substantial evidence." *Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993).

The ALJ's decision must be evaluated "based solely on the reasons given stated in the decision." *Robinson v. Barnhart*, 366 F.3d 1078, 1084 (10th Cir. 2004). A post-hoc rationale is improper because it usurps the agency's function of weighing and balancing the evidence in the first instance. *Carpenter v. Astrue*, 537 F.3d 1264, 1267 (10th Cir. 2008). Thus, I will not consider post-hoc arguments of the Commissioner in reaching my decision.

    B.    <u>Whether the ALJ's Decision is Free of Legal Error and Supported by Substantial Evidence</u>

        1.    <u>Weighing of the Medical Opinions</u>

Plaintiff argues that the ALJ erred in connection with her weighing of the medical opinions. Specifically, he argues that the ALJ ignored the opinion of disability from treating physician Dr. Harrington and failed to properly weigh the opinions of treating physician Dr. Krause. Further, he argues that the ALJ failed to properly assess all of Dr. Richman's opinions, and did not state valid reasons for rejecting the mental

limitations stated by the psychotherapist. I agree that the medical opinions were not properly weighed, constituting reversible error.

I first address the opinion of treating physician Dr. Krause. On May 12, 2009, he restricted Plaintiff to ten pounds of lifting (Tr. 307), four hours of sitting per day, three hours of standing and walking per day, stooping and squatting seldom (*id.* 308), and reaching, handling and fingering occasionally. (*Id.* 309.) On September 13, 2010, Dr. Krause stated that these restrictions still applied. (*Id.* 306.) On January 29, 2011, Dr. Krause certified in a Med-9 form that Plaintiff was disabled and unable to work at any job. (*Id.* 265). The ALJ stated that Dr. Krause's physical RFC assessment and Med-9 form "were given little, and certainly not controlling, weight." (*Id.* 22.) In so finding, the ALJ stated:

> Dr. Krause was not an orthopedist or other treating specialist. Further, Dr. Krause's treatment records revealed very minimal physical examinations and gave great deference to claimant's self-reports of pain without objective corroboration via examinations, imaging or other testing. Further, Exhibit 15F was a simple "check-box" form completed at the behest of claimant's attorney in anticipation of the hearing before the undersigned and contained little, if any, narrative or explanation of the vocational limitations that were purportedly assessed (Exhibit 15F). Similarly, the Med-9 form was prepared for use by the state of Colorado utilizing different regulations than those the undersigned was required to apply. Further, it infringed upon the ultimate determination of disability which, for purposes of Social Security disability matters, has been expressly reserved to the Commissioner.

(*Id.*)

I find error with the assessment of Dr. Krause's opinion. It is undisputed that Dr. Krause was a treating physician. Indeed, his treatment notes of Plaintiff are in the file. (Tr. 293-305, 309.) While the ALJ states that she did not give Dr. Krause's opinion

regarding Plaintiff's restrictions controlling weight (Tr. 22), she did not follow the proper steps in determining this issue.

In evaluating the medical opinions of a treating physician, the ALJ "must complete a sequential two-step inquiry, each step of which is analytically distinct." *Krauser v. Astrue*, 638 F.3d 1324, 1330 (10th Cir. 2011). "The initial determination the ALJ must make with respect to a treating physician's medical opinion is whether it is conclusive, i.e., is to be accorded 'controlling weight,' on the matter to which it relates. *Id.* "Such an opinion must be given controlling weight if it is well-supported by medically acceptable clinical or laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the record." *Id.* "If the opinion is deficient in either of these respects, it is not to be given controlling weight." *Id.* "But finding such deficiencies to resolve the controlling-weight question against a claimant does not end the inquiry." *Id.*

"Even if a treating opinion is not given controlling weight, it is still entitled to deference; at the second step in the analysis, the ALJ must make clear how much weight the opinion is being given (including whether it is being rejected outright) and give good reasons, tied to the factors specified in the cited regulations for this particular purpose, for the weight assigned." *Krauser,* 638 F.3d at 1330. "If this is not done, a remand is required." *Id.* As further explained:

> Adjudicators must remember that a finding that a treating source medical opinion is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or is inconsistent with the other substantial evidence in the case record means only that the opinion is not entitled to " controlling weight," not that the opinion should be rejected. Treating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in [§§ ] 404.1527 and 416.927. *In many cases, a treating*

> *source's medical opinion will be entitled to the greatest weight and should be adopted, even if it does not meet the test for controlling weight.*

*Id.* (citing SSR 96–2p, 1996 WL 374188, at *4 (emphasis added)). "Thus, a deficiency as to the conditions for controlling weight raises the question of how much weight to give the opinion, it does not resolve the latter, distinct inquiry." *Id.* at 1330-31.

In the case at hand, the ALJ did not follow the proper sequential evaluation in determining what weight to give Dr. Krause's opinion. Even if she arguably made the initial determination about controlling weight, it is not clear that the ALJ gave the opinion of Dr. Krause deference as required and weighed the relevant factors. "Indeed, [I] am not even certain if the 'little weight' the ALJ purported to give th[is] opinion[ ] was actually some minimal consideration or no weight at all." *Anderson v. Astrue*, 319 F. App'x 712, 721 (10th Cir. 2009). If the ALJ did give some weight to Dr. Krause's opinions, this should have been explained so that the Court could meaningfully assess it, particularly if, as appears here, the ALJ adopted some of his opinions but not others. *Chapo v. Astrue*, 682 F.3d 1285, 1292 (10th Cir. 2012) ("'[a]n ALJ is not entitled to pick and choose through an uncontroverted medical opinion, taking only the parts that are favorable to a finding of nondisability.'") (quotation omitted).

Moreover, I find error with many of the reasons the ALJ gave in deciding to give "little weight" to Dr. Krause's opinion. First, the ALJ's finding that Dr. Krause's treatment records revealed very minimal physical examinations and gave great deference to Plaintiff's self-reports of pain without objective corroboration via examinations, imaging or other testing is not supported by the record. Dr. Krause examined Plaintiff on many

occasions and documented objective findings of pain, *e.g.,* "pain to palpation over the posterior ribcage on the right side towards the lower end", "pain over the lower thoracic and lumbar region of the spine", "pain to palpation from the midthoracic down to the lower lumbar region over the spine itself and also in the paraspinous muscles bilaterally." (Tr. 304-05, *see also* 294-95, 297, 299-303.)  Based on these objective findings, Dr. Krause diagnosed lower back pain, secondary to diffuse degenerative disc disease. (*Id.* 304.)  Thus, the ALJ's finding that Dr. Krause gave great deference to Plaintiff's self-reports of pain without objective corroboration via examinations is not supported by substantial evidence.

I also find error with the ALJ's decision to give little weight to Dr. Krause's opinion because it was contained in "a simple 'check-box' form completed at the behest of claimant's attorney in anticipation of the hearing before the undersigned and contained little, if any, narrative or explanation of the vocational limitations that were purportedly assessed." (Tr. 22.)  The Tenth Circuit has expressly declined to adopt a categorical rule that check-box forms completed by treating physicians can be rejected as unsupported by substantial evidence. *Anderson*, 319 F. App'x at 723; *see also Carpenter*, 537 F.3d at 1267.

As in *Anderson*, Dr. Krause "actually examined the patient [*i.e.*, Plaintiff] and recorded [his] clinical assessments." 319 F. App'x at 723.  Also as in that case, Dr. Krause made clear that the form he completed was based on his treatment and examination of the claimant (Tr. 307-09), and the form did not ask for rationales or provide space for them. *Id.*  Thus, the failure of Dr. Krause to provide clinical

observations on the form "does not provide a sound foundation for the inference—which the ALJ apparently adopted—that [Dr. Krause's] assessment w[as] of limited reliability, nor does it support the notion that the results that [Dr. Krause] reported were based upon something less than a 'thorough physical examination.'" *Id.* (quotation omitted); *see also Angster v. Astrue*, 703 F. Supp. 2d 1219, 1229 (D. Colo. 2010) (finding that ALJ's decision to reject a mental impairment questionnaire was unfounded given that other evidence showed plaintiff's treatment history and was consistent with questionnaire).

I now turn to the Med-9 forms completed by Dr. Krause and Dr. Harrison opining to Plaintiff's disability.[2] A physician may proffer an opinion that a claimant is totally disabled. *Castellano v. Sec'y of Health and Human Servs.*, 26 F.3d 1027, 1029 (10th Cir. 1994). While these opinions are on an issue reserved to the Commissioner and are not entitled to controlling weight, the ALJ still is required to "provide an evaluation of the. . . opinion and state his reasons for either accepting or rejecting it". *Knight v. Astrue*, 388 F. App'x 768, 772 (2010) (unpublished); *see also Castellano*, 26 F.3d at 1029. Indeed, a doctor's opinion that a person is disabled "reflects judgments about the severity of Plaintiff's impairments, about the prognosis for his condition, and about what Plaintiff can still do despite his impairments." *Fuller v. Astrue*, 766 F. Supp. 2d 1149, 1161 (D. Kan. 2011). Thus, the ALJ was required to "evaluate all the evidence in the

---

[2] As noted by the Commissioner, "Med-9" forms are used by the Colorado State welfare program to determine eligibility for aid to indigent and disabled individuals, and are not used to assess whether those individuals are disabled within the meaning of the Social Security Act. *See* Colorado Department of Human Services, www.cdhs.state.co.us (last visited Dec. 18, 2012).

case record to determine the extent to which the opinion is supported by the record.'" *Id.* at 1160 (quotation omitted).

Here, while the ALJ stated that she considered Dr. Krause's Med-9 form, there is no indication that she considered the relevant factors in deciding to give it weight. Indeed, it appears that she simply rejected it outright. Moreover, the ALJ ignored completely Dr. Harrison's opinion of disability in a Med-9 form. This provided support for the opinion of Dr. Krause and was significant to the overall time frame in which Plaintiff was purportedly disabled. The failure to properly consider these opinions also requires a remand of the case. *Knight*, 2010 WL 2853668, at *3.[3]

I next address the opinions of treating physician David A. Richman, M.D., who treated Plaintiff in connection with a worker's compensation claim relative to Plaintiff's injury in November 2008. (Tr. 21.) On February 23, 2010, Dr. Richman recommended that Plaintiff return to work subject to restricted lifting of five pounds, sitting for two hours per day, and standing and walking for two hours per day. (*Id.* 315-344.) On April 20, 2010, Dr. Richman increased Plaintiff's lifting restriction to ten pounds (*id.* 336), and on July 13, 2010, increased the lifting restriction to 25 pounds. (*Id.* 315.) The ALJ incorporated the 25 pound restriction into the RFC. (*Id.* 21.) In so doing, he stated he gave "great weight" to the last assessment, as it was documented with thorough

---

[3] As noted by Plaintiff, even though Dr. Harrington's opinion only addressed disability during a short period of time, it was nevertheless relevant as one piece of the puzzle which, when considered along with other medical opinions, could establish a sufficient period of disability. Dr. Harrington's opinion must be considered in conjunction with all the other evidence in the record.

-10-

examinations, supported by the objective results and inconsistent [sic] with the record as a whole." (*Id.* 22.)

Again, I agree with Plaintiff that the ALJ erred by giving great weight to Dr. Richman's opinion that Plaintiff could lift 25 pounds, but ignoring without discussion the previous more restrictive limitations on lifting imposed by Dr. Richman. *See Chapo*, 682 F.3d at 1292 (an ALJ cannot discount a portion of a physician's limitations "with no explanation at all as to why one part of h[er] opinion was creditable and the rest was not"). As noted by Plaintiff, these prior restrictions are material to his claim because they can reasonably be interpreted to indicate that Plaintiff's lifting ability improved as of July 13, 2010, but was significantly more limited prior to that date. The ALJ's RFC finding incorporating the 25 pound lifting restriction applied that restriction to Plaintiff's entire claim period, even though Dr. Richman only found it applied after July 13, 2010. On remand, the ALJ must properly consider the earlier restrictions imposed by         Dr. Richman and determine if they support a period of disability from the alleged onset date of November 4, 2008 through July 12, 2010, or some other period of time.

Plaintiff also argues that the ALJ did not state valid reasons for rejecting the mental limitations stated by the psychotherapist. In that regard, Plaintiff obtained psychotherapy from February 17, 2010 to at least October 1, 2010 from Elizabeth Richards, LCSW. (Tr. 310.) In a questionnaire, Ms. Richards rated Plaintiff's mental functioning as at least markedly impaired in all but one area of mental functioning. (*Id.* 310-11.)

The ALJ gave "little to no weight" to the questionnaire completed by Ms. Richards. (Tr. 22.) He found that she "gave great deference to claimant's self-reports despite poor attendance at therapy sessions and the effectiveness of claimant's prescribed Cymbalta in controlling his depression." (*Id.* 21.) He further stated:

> Ms. Richards admittedly saw claimant on only three sporadic occasions (Exhibit 16F) In addition. . ., Ms. Richards' assessment, which contained a number of supposedly "extreme" and "marked" areas of limitation, was inconsistent with claimant's description of his function described in detail previously as well as Ms. Richards' own treatment notes which revealed logical and organized thought processes despite claimant's poor follow through. Further, it, like the questionnaire completed by Dr. Krause, was completed at the request of claimant's attorney and contained little narrative supporting the purported findings.

(*Id.*)

Again, I find error with the assessment of Ms. Richard's opinions. First, as with the findings regarding Dr. Krause, it is unclear what "little to no weight" means. It actually appears that the ALJ may have given some weight to at least a portion of Ms. Richards' findings, since she adopted mental restrictions in the RFC (limiting Plaintiff to simple, unskilled work with an SVP of one or two, and finding he should not work in close proximity to coworkers, function as a member of a team, or have direct minimal contact with the public). (Tr. 19.) Having apparently assigned some weight to Ms. Richards's opinion, the ALJ was required to explain why she adopted some, but not all, of her limitations. *Chapo*, 682 F.3d at 1291-92.[4]

---

[4] The only opinion inconsistent with Ms. Richards' assessment was the opinion of the nonexamining state agency physician, Alberta Ziomek, M.D., who opined that Plaintiff did not have a medically determinable mental impairment. (Tr. 242.) This was not, and indeed could not have been, relied upon by the ALJ. First, it was inconsistent with the ALJ's finding that Plaintiff had severe mental impairments with mental restrictions in the RFC. Second, an ALJ's reliance on an agency medical consultant's opinion is reasonable only insofar as that opinion is supported by evidence in the case record.

Many of Ms. Richards's mental limitations which the ALJ failed to account for are highly supportive of Plaintiff's disability claim. For example, she opined that Plaintiff had an extreme impairment in the ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances. (Tr. 311, item 12.) She also opined that Plaintiff had extreme impairments in the ability to maintain attention and concentration for extended periods, and to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number or length of rest periods. (*Id.*, Items 11, 16.)

The above limitations could preclude all types of employment. *See Chapo*, 682 F.3d at 1290 n. 3 (finding that a reduction to unskilled work only accounts for issues of skill transfer, not impairments of mental functions; and that it is "doubtful" that a "restriction to 'simple' work'. . .would have been sufficient to capture the various functionally distinct mental limitations recognized" by the psychologist); *Bowers v. Astrue*, No. 07-5114, 2008 WL 794853 (10th Cir. March 26, 2008) (unpublished) (finding error with a hypothetical question that assumed simple work that was low in stress and brief in interactions with others was appropriate where the claimant was found to be seriously impaired in her ability to concentrate and pay attention for extended period and moderately impaired in eight other areas but these restrictions were not included in the hypothetical question); *see also Washington v. Shalala*, 37 F.3d 1437, 1440 (10th

---

*Lee v. Barnhart,* 117 F. App'x 674, 687 (10th Cir. 2004) (citing SSR 96-6P, 1996 WL 374180, at *2). I find no support for Dr. Ziomek's opinion in the record.

Cir. 1994) ("'[a] finding that a claimant is able to engage in substantial gainful activity. . . requires a determination that the claimant can *hold* whatever job he finds for a significant period of time'") (quotation omitted). Yet these limitations were not included in the RFC or the hypothetical question.

Moreover, I find several errors with the reasons given by the ALJ for rejecting Ms. Richards' opinion. Her finding that Ms. Richards "gave great deference to claimant's self-reports" ignores the fact that "[t]he practice of psychology is necessarily dependent, at least in part, on a patient's subjective statements." *Thomas v. Barnhart*, 147 F. App'x 755, 759 (10th Cir. 2005) (unpublished). "A psychological opinion need not be based on solely objective 'tests'; those findings 'may rest either on observed signs and symptoms or on psychological tests.'" *Id.* (quotation omitted).

In this case, despite the fact that Ms. Richards only saw Plaintiff on "three sporadic occasions", she diagnosed severe major depressive disorder and documented observed signs and symptoms that supported her opinion. (*See* Tr. 282-83—mood was tired and depressed", "affect was flat" and "eye contact was passing", "[h]e continues to seem detached during sessions, and very tired"; 284-85.) Thus, the ALJ's finding that she based her opinion on Plaintiff's self-reports is not supported by the record. *See Langley v. Barnhart*, 373 F.3d 1116, 1121 (10th Cir. 2004) (an ALJ may not reject opinions of a treating physician "based merely on h[er] own speculative conclusion that the report was based only on claimant's subjective complaints. . . . [t]he ALJ [must have] a legal or evidentiary basis" for this finding). The ALJ's finding that Ms. Richards' assessment was inconsistent with her own treatment notes is also not supported by

-14-

substantial evidence.[5]  Ms. Richards' opinion is also not necessarily inconsistent with Plaintiff's description of his function described in the ALJ's decision.  Further, her opinion is supported by the opinions of Henry Ybarra, LCSW, and another therapist who saw Plaintiff, Nicholas Rodriguez, LCSW.[6]  (*Id.* 287.)  This was not taken into account by the ALJ.

I also find that the ALJ erred by rejecting Ms. Richards' opinion because "it, like the questionnaire completed by Dr. Krause, . . .contained little narrative supporting the purported findings."  (Tr. 22.)  Ms. Richards was a treating source who had examined Plaintiff and documented her findings.  Thus, as discussed previously in connection with Dr. Krause, her failure to provide more narrative supporting her findings "does not provide a sound foundation for the inference—which the ALJ apparently adopted—that [her] assessment w[as] of limited reliability." *Anderson*, 319 F. App'x at 723; *see also McGoffin v. Barnhart*, 288 F.3d 1248, 1252 (10th Cir. 2002) (an ALJ cannot rely on the fact that a medical provider did not adequately document why she found a claimant to have marked limitations, the ALJ should have contacted the provider for clarification on the issue rather than simply discounting the provider's opinions).  Finally, the fact that

---

[5]  The fact that Ms. Richards found in her treatment notes that Plaintiff had logical and organized thought processes despite Plaintiff's poor follow through were does not detract in any manner from her other findings documented above that supported her diagnoses and opinion.

[6]  Mr. Ybarra diagnosed Plaintiff with adjustment disorder with mixed anxiety and depression, post traumatic stress disorder, and polysubstance dependence, and assessed a GAF score of 50. (Tr. 291.) "GAF", referring to "Global Assessment of Functioning", is a clinician's judgment of an individual's level of functioning. American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders* (Text Revision 4th ed. 2000) at 32.  A GAF score of 41-50 indicates serious symptoms such as inability to keep a job. *Id.* at 34; *Langley*, 373 F.3d at 1122 n.4.  Mr. Rodriguez stated that it sounded like Plaintiff was going through an adjustment disorder as well as PTSD, and that "[g]iven the symptoms that Mr. Salazar presents his prognosis is guarded." (Tr. 288.)

either Ms. Richards' or Dr. Krause's opinions were completed at the request of Plaintiff's attorney does not provide a basis to reject their medical findings. *See Washington*, 37 F.3d at 1439 (medical source's statements about a claimant's condition or impairments are specific medical findings which the ALJ erred in rejecting in the absence of conflicting evidence).[7]

### 2. Assessment of RFC

In addition to the above errors Plaintiff argues, and I agree, that the ALJ erred in assessing the RFC because she did explain the evidentiary basis for the limitations she imposed. The law is clear that the RFC "must include a narrative discussion describing how the evidence supports each conclusion, citing *specific* medical facts. . . and nonmedical evidence." *Southard v. Barnhart*, 72 F. App'x 781, 784 (10th Cir. July 28, 2003) (unpublished) (citing SSR 96-8p, 1996 WL 374184, at *7). The ALJ must also conduct a "function-by-function assessment based on all the relevant evidence." *Id.* In this case, the ALJ erred by failing to state how she made her decision as to many of the RFC findings or what evidence she relied on in making these findings. *See Conkle v. Astrue*, 297 F. App'x 803, 806 (10th Cir. 2008) (unpublished).

---

[7] While the Commissioner points out that Ms. Richards is not an acceptable medical source, this was not a factor relied on by the ALJ. Thus, it is an improper post hoc argument. *Carpenter*, 537 F.3d at 1267. Moreover, the ALJ was still required to weigh her opinion. Indeed, "information from such 'other sources' may be based on special knowledge of the individual and may provide insight into the severity of the impairment(s) and how it affects the individual's ability to function." SSR 06-03p, 2006 WL 2329939, at *2-4 (2006). "[D]epending on the particular facts in a case, and after applying the factors for weighing opinion evidence, an opinion from a medical source who is not an 'acceptable medical source' may outweigh the opinion of an 'acceptable medical source,' including the medical opinion of a treating source." *Id.* at 5.

Moreover, the evidence cited by the ALJ does not address many of the restrictions found by the ALJ.  Plaintiff points out that no medical source stated that he can sit for more than four hours per day, or stand/walk for more than three hours.  Further, no medical source stated an opinion on Plaintiff's capacity to push or pull.  There is also no lay testimony as to Plaintiff's capacity to sit, stand, walk, push or pull.  Accordingly, the decision regarding the specific sitting, standing, pushing or pulling capacities found by the ALJ do not appear to be supported by substantial evidence.

I also note that the ALJ did not explain how she determined Plaintiff's mental restrictions, including limiting Plaintiff to simple, unskilled work, not in close proximity to coworkers, and with minimal contact with the public.  (Tr. 19).  These do not correspond to Ms. Richards' findings, and I have found no record evidence that supports those specific restrictions.  *See also Chapo*, 682 F.3d at 1290 n. 3 (finding problematic a RFC limiting a claimant to simple, unskilled work when the record contained various functionally distinct mental limitations recognized by the psychologist).  Since the ALJ erred in her duty regarding the RFC assessment, I cannot meaningfully review the ALJ's decision.  This also is a basis for remand.  *Conkle*, 279 F. App'x at 806.[8]

III.   CONCLUSION

Based upon the foregoing, I find that the ALJ did not properly analyze and weigh the medical evidence or assess Plaintiff's RFC.  I find that this case must be reversed and remanded for further fact finding, rather than reversed for an immediate award of

---

[8] While the Commissioner argues in depth about why the ALJ's credibility decision should be upheld, Plaintiff did not argue error in connection with that decision.  Thus, I do not address the issue, and am perplexed why the Commissioner did so.

benefits as requested by Plaintiff.  *See Sorenson v. Bowen*, 888 F.2d 706, 713 (10th Cir. 1989) (outright reversal and remand for immediate award of benefits is appropriate only when additional fact finding would serve no useful purpose.).  It is therefore

ORDERED that this case is **REVERSED AND REMANDED** to the Commissioner for further fact finding as directed in this Order pursuant to sentence four in 42 U.S.C. § 405(g).

Dated:  September 27, 2013

                                                BY THE COURT:

                                                s/ Wiley Y. Daniel
                                                Wiley Y. Daniel
                                                Senior United States District Judge